**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **TIFFANI N. NEUBEL-JOHNSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-1029-SDJ-BD** |
| | § | |
| **COLLIN COLLEGE,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons set forth in the accompanying brief, Defendant Collin College ("Defendant" or "the College"), by and through its attorneys Clark Hill PLC, moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56, as there is no genuine dispute as to any material fact, entitling Collin College to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (Summary judgment must be granted if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Respectfully submitted,

*/s/ Kimberly S. Moore*
**KIMBERLY S. MOORE**
State Bar No. 00784629
ksmoore@clarkhill.com
**MEAGHAN L. KUELBS**
State Bar No. 24105277
mkuelbs@clarkhill.com
**CLARK HILL PLC**
2600 Dallas Parkway
Suite 600
Frisco, Texas 75034
(469) 287-3900
(469) 287-3999 Fax

**ATTORNEYS FOR DEFENDANT**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **TIFFANI N. NEUBEL-JOHNSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-1029-SDJ-BD** |
| | § | |
| **COLLIN COLLEGE,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUES .......................................................................... 5

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ............................... 5

III.  SUMMARY JUDGMENT STANDARD ...................................................... 20

IV.   ARGUMENT AND AUTHORITIES ............................................................ 21

  A.  **Disability Discrimination** ....................................................................... 21

    1.  Recorded Conversation on November 2, 2021 ........................................... 23

    2.  Recorded Meeting on November 9, 2021 ................................................... 23

    3.  Recorded "Emotional Intelligence 2.0" Conversation ................................ 24

  B.  **Constructive Discharge** ........................................................................ 25

    1.  Plaintiff's working conditions would not have caused a reasonable person to resign .. 26

    2.  Plaintiff is collaterally estopped from claiming she was a qualified individual with a disability after January 4, 2022 ................................................................. 31

  C.  **Failure to Accommodate** ...................................................................... 33

    1.  Collin College did not deny the Plaintiff leave to attend doctor's appointments ......... 34

    2.  Collin College offered Plaintiff an alternative accommodation to the window covering 38

    3.  Plaintiff was able to perform her job responsibilities following submission of her September 29th request for accommodations .......................................... 40

  D.  **Harassment** ........................................................................................... 43

    1.  Criticism of plaintiff's performance does not constitute disability-based harassment . 44

    2.  Director Aboalam's Alleged Comments Do Not Amount to Actionable Harassment . 45

    3.  The College's Efforts to Engage in the Interactive Process Are Not Evidence of Harassment ............................................................................................... 45

  E.  **Retaliation** ............................................................................................. 46

    1.  There is no evidence that Plaintiff's conversation with Christy Phoenix on April 28, 2021 constituted protected activity, or that there was a causal link between the conversation and the Level 1 Warning ........................................................................ 47

    2.  There is no evidence that Collin College was aware of Plaintiff's alleged submission of an internal complaint on June 10, 2021 .............................................. 49

    3.  Plaintiff did not engage in protected activity on July 13, 2021 .................... 51

    4.  Plaintiff did not suffer any adverse employment action as a result of filing a charge of discrimination with the EEOC ....................................................... 52

V.    CONCLUSION ........................................................................................ 55

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................... 20, 21

*Brown v. Kinney Shoe Co.*, 237 F.3d 556 (5th Cir. 2001) ............................................................ 26

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................................................. 54

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408 (5th Cir. 2007) ................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 20, 21

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)....................................................... 32

*Cole v. City of Port Arthur, Texas*, No. 1:13-CV-176, 2014 WL 3513366 (E.D. Tex. July 16, 2014) ................................................................................................................................................. 54

*Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785 (5th Cir. 2017) ........................... 44, 45

*Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476 (5th Cir. 2016) .............................. 21, 40

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009)....................................... 39, 46

*E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014)...................................................... 20, 21

*Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450 (5th Cir. 2013)....... 33, 47

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229 (5th Cir. 2001) ..................................... 45

*Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523 (5th Cir. 2022)............................................... 21

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503 (5th Cir. 2003)............................................ 43

*Grice v. FMC Techs., Inc.*, 216 Fed. Appx. 401 (5th Cir. 2007) .................................................. 54

*Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216 (5th Cir. 2011) .............................................. 40

*Haley v. Alliance Compressor LLC*, 391 F.3d 644 (5th Cir. 2004)............................................... 26

*Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) ........................................................ 22, 23

*Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x 913 (5th Cir. 2006) ................. 49

*Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427 (5th Cir. 2023) ........................................... 22, 25

*Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444 (6th Cir. 2004)........................................... 39

*Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535 (5th Cir. 2015) ................................. 20

*Herrera v. CTS Corp.*, 183 F. Supp. 2d 921 (S.D. Tex. 2002) ..................................................... 32

*Jurgens v. EEOC*, 903 F.2d 386 (5th Cir. 1990)........................................................................... 26

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005) ................................................. 25

*King v. Louisiana*, 294 F. App'x 77 (5th Cir. 2008)..................................................................... 23

*Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157 (5th Cir. 2007).............. 26

*Long v. Eastfield Coll.*, 88 F.3d 300 (5th Cir. 1996) .................................................................... 47

*Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731 (5th Cir. 1999)................................................... 28, 42

*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020) .................................................... 47

*Marshall v. McDonough*, 2021 WL 3917001 (N.D. Tex. July 15, 2021)..................................... 54

*McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1998) ............................. 33, 48

*Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310 (5th Cir. 2017).............................. 29

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)...................................................................... 22

*Robinson v. Waste Mgmt. of Tex.*, 122 Fed. Appx. 756 (5th Cir. 2004)................................. 26, 31

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) .............................. 20

*Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 (5th Cir. 1999)........................... 44, 45

*Sherrod v. American Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998) ............................................ 48

*Shryer v. Univ. of Texas Sw. Med. Ctr. at Dallas*, 587 F. App'x 151 (5th Cir. 2014) ................. 27

*Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996)............................................. 28, 33

*Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021) ......................................................... 46

*Tiblier v. Dlabal*, 743 F.3d 1004 (5th Cir. 2014).......................................................................... 20

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715 (5th Cir. 1995)....................................................... 21

*Welsh v. Ft. Bend Indep. Sch. Dist.*, 941 F.3d 818 (5th Cir. 2019)............................................... 23

**Statutes**

42 U.S.C. §423 ........................................................................................................................... 31

**Regulations**

29 C.F.R. pt. 1630, App., § 1630.9 ......................................................................... 36, 40

# I.     STATEMENT OF THE ISSUES

Whether Defendant Collin College is entitled to summary judgment on Plaintiff's claims that the College violated the Americans with Disabilities Act, as amended (ADA), by (1) discriminating against her based on her disabilities, (2) failing to accommodate her disabilities, (3) harassing her based on her disabilities, (4) constructively discharging Plaintiff, and/or (5) retaliating against her for engaging in activity protected by the ADA. Defendant asks the Court to respond "Yes" to each of these questions.

# II.     __STATEMENT OF UNDISPUTED MATERIAL FACTS__

## Plaintiff's Interview and Offer of Employment with Collin College

Collin College hired Plaintiff as a Professor in Collin College's Pharmacy Technician program with a start date of March 22, 2021.[1]  Plaintiff's supervisor was Program Director Hatem Aboalam.[2] Plaintiff voluntarily disclosed her diagnosis of Attention Deficit Hyperactivity Disorder (ADHD) during the interview process,[3] but did not notify anyone at Collin College about her need for a service dog accommodation before orientation or her first day of work.[4]

## Collin College Granted Plaintiff's Request to Bring a Service Dog to Work

Despite not having requested any accommodation during the hiring or onboarding process, Plaintiff brought a dog to work with her on her first day at Collin College.[5] On March 25, 2021, HR Manager in the Benefits Department, Christina Canales, notified Plaintiff that the College had "no documentation that a service dog is needed due to an impairment."[6] Canales asked Plaintiff to

---

[1] APP. 1-2
[2] APP. 1-2
[3] APP. 9-11 (Neubel Johnson Dep. Tr. 89:10-91:12)
[4] APP. 13 (Neubel Johnson Dep. Tr. 95:22-24)
[5] APP. 12-13 (Neubel Johnson Dep. Tr. 91:24-92:3; 95:13-24)
[6] APP. 40

provide "information as soon as possible that identifies the purpose of the dog and what duties the dog performs."[7]

On March 26, 2021, Plaintiff submitted a letter from Dr. Haresh Boghara dated April 28, 2020, asking that the Plaintiff be allowed to bring her service dogs "into your establishment, into the cabin of the aircraft per your airline access, or place of employment according to company policy."[8] Plaintiff subsequently submitted a Reasonable Accommodation Request form on April 7, 2021.[9] The only accommodation Plaintiff said she needed at this time was "[t]o be accompanied by service dog(s) at work."[10] Collin College approved Plaintiff's service dog accommodation request on April 8, 2021.[11] Accordingly, less than a month after starting at Collin College, Plaintiff requested and received a workplace accommodation which familiarized her with the exact process for requesting such accommodations through the Benefits Department.

**Plaintiff's Early Communications and Difficulties with Aboalam**

Director Aboalam provided Plaintiff with resources to assist in familiarizing her with Collin College and the Pharmacy Technician program. On March 31, 2021, shortly over a week into Plaintiff's tenure with the College, Director Aboalam sent Plaintiff an email with the goals of the Pharmacy Technician program attached.[12] He sent Plaintiff information for new faculty on April 6, 2021,[13] and a link to faculty resources and a faculty handbook on April 28, 2021.

On April 22, 2021, Director Aboalam sent Plaintiff an email asking about several work-related items.[14] Plaintiff responded to Aboalam, her supervisor: "Please allow me to be open and

---

[7] APP. 40
[8] APP. 41-43
[9] APP. 45-46
[10] APP. 45
[11] APP. 47-53
[12] APP. 55
[13] APP. 57
[14] APP. 64

honest, you are about to stress me out."[15] Director Aboalam replied by explaining that they were "on a time-sensitive mission to launch our program by August fully, and that was mainly the reason we brought you on board based on your credentials and experience."[16] Aboalam also told Plaintiff that his door was "always open" and invited her to "feel free to reach out anytime for questions or concerns."[17]

On April 27, 2021, Plaintiff asked HR Consultant Christy Phoenix whether Phoenix had time that day to "discuss some concerns."[18] When Plaintiff responded to Director Aboalam's April 22nd email, she blind copied Phoenix.[19] Plaintiff and Phoenix met on April 28, 2021,[20] and Phoenix sent Plaintiff an email the following day summarizing her feedback following their discussion and Phoenix's review of the emails Plaintiff and Director Aboalam had exchanged between April 22nd and April 27th.[21] Phoenix noted that Plaintiff should work with Director Aboalam in dealing with issues involving Plaintiff's work hours and schedule and "[i]f needed, go through accommodation process if applicable."[22]

Phoenix also addressed "focus time," an issue Plaintiff raised during their meeting, explaining that Collin did not have a policy on that topic, but that Plaintiff should "continue to work on communication with [Director Aboalam] and through this relationship establish what works best for you to complete the assigned projects."[23] Despite Phoenix's suggestion, Plaintiff did not speak with Aboalam about focus time.[24] Finally, Phoenix stressed in writing to Plaintiff in

---

[15] APP. 63-64
[16] APP. 59-63
[17] APP. 62
[18] APP. 77
[19] APP. 59
[20] APP. 72
[21] APP. 70-71
[22] APP. 71
[23] APP. 71
[24] APP. 14 (Neubel Johnson Dep. Tr. 134:1-7)

that "Communication is key! Do not ignore or fail to reply to a directive or emails failure to follow-up can be viewed as insubordination."[25]    Therefore, as of April 29th, the only request for accommodation Plaintiff had submitted to the Human Resources/Benefits Department was the ability to bring a service dog to work, which Collin College granted.

## Plaintiff Did Not Request Accommodation in Her Initial Communications About Her Schedule

On April 29, 2021, Plaintiff asked Director Aboalam several questions about her work hours: whether her commute was included in her work hours, whether her standard work hours were 9 am to 5pm or 8 am to 4pm, and whether she could adjust her class times to provide more time to meet with students. [26] Plaintiff sent the same questions to Phoenix on May 3, 2021.[27] Plaintiff did not mention a disability or a disability-related need for an adjustment to her schedule in any of these communications.

On May 4, 2021, Plaintiff asked Director Aboalam if she could adjust her work hours for the week so that could attend a monthly doctor's appointment that Friday.[28] She did not mention the reason for the doctor's appointment in the email.[29]Aboalam responded the same day by asking Plaintiff how she would like to adjust her hours over the following days.[30]

On May 5, 2021, Aboalam notified Plaintiff that the expectations for her hours in at work were Monday to Friday, 8am to 5pm.[31] He also asked Plaintiff to "communicate about any appointments ahead of time so we can better prepare."[32]

## Director Aboalam Issued Plaintiff a Level One Warning on May 5, 2021

---

[25] APP. 71
[26] APP. 79
[27] APP. 69
[28] APP. 83
[29] APP. 83
[30] APP. 83
[31] APP. 85
[32] APP. 85

On May 5, 2021, Director Aboalam issued Plaintiff a "Level 1 Warning" based on incidents when Plaintiff "contradicted Collin College's mission statement and core values" during her first 45 days of employment.[33] Director Aboalam cited several instances when he had been unable to locate Plaintiff and/or Plaintiff did not respond to his written communications.[34] He also listed materials he had provided to Plaintiff to assist her in learning her role and tasks he asked Plaintiff to complete, and examples of subsequent interactions with Plaintiff that demonstrated she was both still unfamiliar with her job description and not following his instructions. Despite these difficulties, Director Aboalam assured Plaintiff on May 7, 2021 that "we will be here for you whenever you need help or resources to preform [sic] your job, deliver your tasks on time."[35] In the same email, Director Aboalam sought to clarify the goals Plaintiff needed to work on at that time.[36]

Plaintiff emailed Collin College's HR Manager, Tonya Jacobson, on May 6, 2021, and asked for information on how to start the process of filing a complaint against Plaintiff's "direct supervisor."[37] Jacobson provided Plaintiff with a link to the College's complaint information webpage,[38] but Plaintiff did not file an internal complaint at that time.

**Plaintiff Opted Not to Submit an Additional Accommodation Request in May 2021**

On Saturday, May 8, 2021, Plaintiff asked Canales whether she needed another accommodation request from her doctor "for assistance like additional time to complete projects, daily focus time, or flexibility in her work schedule."[39] Canales explained that because Collin

---

[33] APP. 87-90. Collin College's Coaching and Discipline Instructions state that an employee discipline notice "is used in situations that have either progressed beyond coaching or are serious enough to warrant discipline. (APP. 92-93).
[34] APP. 87-90
[35] APP. 95-96
[36] APP. 95-96
[37] APP. 281
[38] APP. 280-281
[39] APP 99

College only had the service dog request on file, Plaintiff would need to complete the online accommodation request form and submit medical information if she needed these additional accommodations.[40] The physician's letter Plaintiff had submitted to the College in support of her request for a service dog did not state that the Plaintiff's disabilities caused her to need additional time to complete projects, daily focus time, or flexibility in Plaintiff's work schedule.[41]

Plaintiff did not submit an online accommodation request after Canales directly responded to her question. Plaintiff has no evidence that she asked Canales or Director Aboalam for leave to obtain medical information to support a request for accommodation,[42] but she did not hesitate to ask for leave at other points during her employment with Collin College when she needed time off. For example, on May 10, 2021, Plaintiff notified Aboalam that she had doctor appointments on June 4, 2021 and July 2, 2021.[43] Plaintiff was on leave on May 21, 2021, and May 26-28, 2021.[44] On August 2, 2021, Plaintiff notified Director Aboalam that she would not be in that day due to a "critical personal situation."[45] Aboalam responded by thanking Plaintiff for letting him know.[46] On September 14, 2021, Plaintiff told Director Aboalam that her doctor was leaving the country and had moved her appointments to the following day at 12:30pm and all day on Friday, September 17th.[47] Aboalam approved these requests for time off or leave.[48] Plaintiff had doctor appointments on October 4, 2021, and October 13, 2021.[49] Again, Director Aboalam thanked Plaintiff for letting him know and approved her leave.[50] Plaintiff informed Director Aboalam on

---

[40] APP. 98-99
[41] APP. 43; APP. 15 (Neubel Johnson Dep. Tr. 151:7-15)
[42] APP. 16-17 (Neubel Johnson Dep. Tr. 158:6-10, 23-25; 159:1-15)
[43] APP. 103-104
[44] APP. 106-108
[45] APP. 110
[46] APP. 110
[47] APP. 114
[48] APP. 112-114
[49] APP. 116-118
[50] APP. 116-118

November 18, 2021 that she would not be able to work that day because she was without her prescription.[51] Aboalam responded, "Ok!"[52] Director Aboalam subsequently approved Plaintiff's leave through Monday, November 22, 2021, after Plaintiff notified him that her doctor only sent prescriptions for her medication in on Fridays.[53]

**Plaintiff's Performance Difficulties Continued in May and June 2021**

On May 10, 2021, Director Aboalam emailed Plaintiff about an assignment and told her he expected her to have it at a May 12th meeting with Dean Millen.[54] Plaintiff said she did not believe she could complete the assignment by May 12th.[55] Director Aboalam extended the completion deadline and informed Plaintiff that her that failure to deliver on time "will delay our program progress as we have plenty of other things to work on."[56]

On June 8, 2021 Plaintiff asked Director Aboalam whether they could remove a due date related to completion of the student handbook, which was needed so that students could learn important information about the Pharmacy Technician program.[57] When Director Aboalam denied the request, Plaintiff told Aboalam that she would not meet the deadline and also did not know when the project would be completed.[58] Director Aboalam responded: "This document was sent to you on 4/8 as a resource and it was reassigned to you on 5/27 as a task." [59] Director Aboalam expressed concern that Plaintiff had not notified him of her inability to complete the project on time until the project's due date, telling Plaintiff, "[t]hat does not show a good communication

---

[51] APP. 121
[52] APP. 120
[53] APP. 120
[54] APP. 124
[55] APP. 123-124
[56] APP. 123
[57] APP. 130; APP. 21-22 (Neubel Johnson Dep. Tr. 175:8-176:11)
[58] APP. 129
[59] APP. 128

from your end about tasks assigned to you." [60] Plaintiff claimed, in part, that Director Aboalam was not giving her "adequate time and necessities" to meet his expectations. [61] Director Aboalam asked Plaintiff for specifics about what tasks she did not have "adequate time" to complete. [62] Plaintiff did not mention a disability, disability-related limitation or need for an accommodation of additional time to complete tasks at any point during this email exchange with Director Aboalam. [63]

At 4:48pm on June 9, 2021, Director Aboalam sent an email to Plaintiff that began: "I needed to emphasize the importance of sticking to deadlines, deliverables and communication on what [is] needed to deliver tasks, so far we have not been moving forward with the program in an acceptable pace, the explanation you provide on why the tasks are not delivered on time does not cancel our [sic] the fact that the tasks are not delivered and the deadline [sic] are not met." [64] Aboalam cited several examples of Plaintiff's failure to communicate about resources needed for tasks and reminded Plaintiff of the action plan set forth in her Level One Warning. [65]

Plaintiff sent an email to Dean Michelle Millen and Christy Phoenix on June 10, 2021 with the subject line "Please help me." [66] Plaintiff represented to Phoenix and Dean Millen that Director Aboalam had not contributed to any project she had worked on since she started with the College, that he "twist[ed] situations and verbiage to paint [Plaintiff] as if I [sic] hindering the program and a poor employee," and that she felt obligated to stay on campus later than others because she had to be available whenever Director Aboalam needed her. [67] She did not mention any particular

---

[60] APP. 128
[61] APP. 127-128
[62] APP. 127
[63] APP. 126-130
[64] APP. 132-133
[65] APP. 132-133
[66] APP. 136
[67] APP. 136

disability, any reasonable accommodation, harassment, or discrimination in this email.[68] Dean Millen responded to Plaintiff's email within three hours by thanking Plaintiff for expressing her concerns and telling Plaintiff she would "target early next week" to sit down with Plaintiff and Director Aboalam to "try and come to a shared understanding and outline a path forward."[69] Nevertheless, Plaintiff submitted a grievance to the State Auditor's Office approximately five days later, on or around June 15, 2021, claiming that Director Aboalam had purportedly plagiarized materials from colleagues, "harassed and intimidated [Plaintiff] with emails, policies, micro-managing, and non-verbal communication," and accused her of not working her required office hours of 8am to 5pm.[70] Plaintiff made no mention of disability discrimination in the grievance she submitted to the State Auditor's Office.[71]

## The Alternative Accommodation Offered by Collin College in Response to Plaintiff's Request to Cover Her Office Window

At some point during Plaintiff's employment, she also covered up a window in her office that faced the hallway. On June 7, 2021, Director Aboalam told Plaintiff that, per Dean Millen, Plaintiff could not cover that window for safety-related reasons.[72] Director Aboalam asked Plaintiff to uncover that portion of her window by the end of the day and Plaintiff agreed.[73]

Plaintiff recorded a meeting she had with Dean Millen, Aboalam, and Phoenix on June 14, 2021, and submitted that recording to her Amended Complaint as Exhibit R.[74] At the 16:27 mark of the recording Plaintiff is heard saying: "[Hatem] has never asked me why did I close my door. He's never asked me why did I put that paper up to my window." At 16:50, Plaintiff told the group

---

[68] APP. 135-136
[69] APP. 135
[70] APP. 138-139
[71] APP. 138-139
[72] APP. 141
[73] APP. 141
[74] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "06.14. 2021 Lay out all issues")

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**                                             13
ClarkHill\B2723\434163\282733068.v5-7/7/25

that she "needed to cover" her office window due to her ADHD and that the covering was a suggestion from "one of our partner team members. They knew why it was there. They understood. It was a suggestion, so I did it."

At the 24:40 mark of Plaintiff's recording of the June 14th meeting, Dean Millen explained that Collin College did not allow people to cover the sidelight in their office "because if there is an emergency, we don't know who's in what office." Phoenix then suggested to Plaintiff that she submit an accommodation request through the Benefits Department. When Plaintiff stated that she did not know what kind of accommodation she would request Phoenix responded: "Maybe a different office so that your desk is not in the break area?" Despite this offer of an alternative accommodation, Plaintiff admits that she never requested to change offices.[75]

**Collin College Disciplined Plaintiff a Second Time for Making Inappropriate Comments to a Coworker**

During the Plaintiff's June 14th meeting with Dean Millen, Aboalam, and Phoenix she also received a Level Two Warning for comments she made to Administrative Assistant Diane Eure.[76] At the 44:47 mark of Plaintiff's recording of that meeting Plaintiff is heard admitting that she made a comment to Ms. Eure about "feeling like a slave that has been worked really hard."[77] Phoenix informed Plaintiff at 46:36 that if Plaintiff acknowledged having that conversation with Ms. Eure, "then it's a Level Two disciplinary action because that behavior does not align with Collin core values." At 47:27 Plaintiff asked whether she could apologize to Ms. Eure.

**Collin College's Human Resources Manager Assisted Plaintiff with Filing an Internal Complaint on July 13, 2021**

---

[75] APP. 19-20 (Neubel Johnson Dep. Tr. 172:6-173:4)
[76] APP. 143-144
[77] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "06.14. 2021 Lay out all issues")

HR Manager Jacobson emailed Plaintiff on July 13, 2021 to notify her that the State Auditor's Office had referred Plaintiff's complaint to the College for further review and/or action.[78] Jacobson told Plaintiff that she should file a formal complaint in the Collin College system if she wished to proceed.[79] Plaintiff represented to Jacobson that she previously filed an internal complaint on June 10, 2021, and Jacobson informed her that the College had not received any formal complaint from her through its complaint system.[80] Collin College has no record that Plaintiff submitted an online Employee Complaint on June 10, 2021, and Plaintiff has no confirmation that Collin College received the submission she claims to have uploaded on June 10, 2021.[81]

Accordingly, since no internal complaint had been received on June 10, Ms. Jacobson assisted Plaintiff with filing an internal complaint on July 13, 2021.[82] In the complaint, Plaintiff accuses Director Aboalam of disciplining Plaintiff on May 5, 2021 based on false accusations, presenting Plaintiff's work as his own, and accusing her of not being available or not working during her required hours.[83] Plaintiff does not reference disability discrimination in her complaint.[84] Under "Relief Requested," Plaintiff wrote that she wanted Director Aboalam dismissed or terminated from his position, to be placed under a different supervisor, and to have her disciplinary action removed from her employee record.[85] Notably, Plaintiff did not ask for any accommodations or changes to her work environment in this submission to the College's HR Department.

---

[78] APP. 148-149
[79] APP. 148-149
[80] APP. 148
[81] APP. 23 (Neubel Johnson Dep. Tr. 190:12-24)
[82] APP. 146-147; APP. 151-153
[83] APP. 151-153
[84] APP. 151-153
[85] APP. 153

Plaintiff received a response to her internal complaint from Collin College's Resolution Review Panel's ("RRP") on September 9, 2021.[86] The RRP concluded that it could not substantiate any of Plaintiff's claims.[87] Although Plaintiff was aware of her right to appeal the RRP's response, she did not do so.[88] Therefore, the findings of the RRP became final and Plaintiff's complaint was dismissed.

**Plaintiff's Faculty Performance Appraisal and Performance Improvement Plan**

Plaintiff received her 2020-2021 Faculty Performance Appraisal on July 30, 2021.[89] Director Aboalam rated Plaintiff as "Meets Expectations" in the areas of Teaching, Advising and Supporting Students, and Professional Development, but as "Needs Improvement" in College Service and Professionalism.[90] Plaintiff also received an overall rating of "Needs Improvement."[91] Director Aboalam explained that there were "gaps and areas of concern that have impeded the progress of the program" and that he would "like to see [Plaintiff] take more initiative with program needs, submit work that requires fewer edits, and feel comfortable as a team member within the program."[92] Aboalam also noted that he selected the overall rating of Needs Improvement "[a]s a result of the Level 2 disciplinary action."[93]

In order to assist Plaintiff in improving, Director Aboalam issued a Performance Improvement Plan ("PIP") to Plaintiff on August 16, 2021.[94] The PIP listed three deficiencies in Plaintiff's job performance: "Poor quality of work," "Improve communication," and

---

[86] APP. 155-164
[87] APP. 155-164
[88] APP. 155-164; APP. 26-27 (Neubel Johnson Dep. Tr. 219:18-220:6)
[89] APP. 166-191; Plaintiff claims that College policy requires that employees who have been with the College for less than 6 months be rated as "Meets Expectations." The College has no such policy.
[90] APP. 166-191
[91] APP. 188-189
[92] APP. 188-189
[93] APP. 188-189
[94] APP. 193-200

"Commitment to program success."[95] In the section of the PIP titled "Support to be provided by a supervisor," Director Aboalam wrote: "To improve quality of communication, the program director will provide a copy of Emotional Intelligence 2.0, a book by Jean Graves and Travis Bradberry, a monthly discussion will be required to discuss the outcomes from the book for November and December."[96]

Plaintiff recorded the August 16th meeting when she received the PIP and submitted that recording to her Amended Complaint as Exhibit R.[97] At 8:17 in the recording Plaintiff is heard asking Director Aboalam whether the Emotional Intelligence 2.0 book comes in audio form. Director Aboalam responded: "I checked for the paper copy, but if there is an audio version at the library you are welcome to get that if it would be easier for you." On August 16, 2021, Director Aboalam notified Plaintiff that he had secured the requested audiobook.[98] Plaintiff does not dispute that Collin College provided her with a copy of the audiobook.[99]

## Collin College Engaged in the Interactive Process Upon Receipt of Plaintiff's September 2021 Request for Accommodation

On September 29, 2021, Plaintiff submitted a request for reasonable accommodation to Collin College's HR/Benefits Department.[100] Specifically, Plaintiff requested: "approval for learning materials about ADHD as it relates to me and how a supervisor can work with an employee with ADHD, modified work schedule to office hours and teaching schedule, and ability to telework from home as need [sic], at no more than 2 days per week to assist with unexpected psychosis episodes related to my disabilities."[101] As a part of Plaintiff's request for accommodation

---

[95] APP. 193-200
[96] APP. 195
[97] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "08.16. 2021 PIP Meeting - finished")
[98] APP. 202
[99] APP. 263-264 (Plaintiff's Response to Defendant's Interrogatory No. 2)
[100] APP. 204-205
[101] APP. 204-205

she acknowledged that she was responsible for providing documentation of her disability that supported her request for accommodation, and that she must provide documentation from an appropriate health care professional to establish her eligibility as a person with a disability.[102]

Christina Canales acknowledged receipt of Plaintiff's request for accommodation on October 8, 2021, and asked Plaintiff to provide her with medical information related to her requested accommodations.[103] Canales informed Plaintiff that she would proceed with Plaintiff's requests once the medical information was received.[104]

On November 19, 2021 Plaintiff sent Canales a letter from Nurse Practitioner Nikki Powell, who wrote: "Requested accommodations are as follows but not limited to" and then listed **34** accommodations.[105] Plaintiff stated in her Amended Complaint that Powell "gave accommodations suggested by AskJan.org[106] which are often referenced and recommended by both the ADA and EEOC."[107] Canales sent two follow-up questions about the requested accommodations to Plaintiff on December 7, 2021 and Plaintiff responded on December 15, 2021.[108] Collin College was subsequently closed for Winter Break for approximately two weeks. Plaintiff summarily resigned from her employment on January 28, 2022 before the College completed its assessment of Plaintiff's requested accommodations.

**Plaintiff Applied for Social Security Disability Benefits and Submitted Her Resignation**

In a recorded meeting on December 7, 2021, Plaintiff notified Dean Millen and Aboalam that she voluntarily wanted to transfer to part-time status as an adjunct faculty member.[109] Dean

---

[102] APP. 205
[103] APP. 211-212
[104] APP. 211-212
[105] APP. 214-216
[106] JAN is the Job Accommodation Network, a service of the U.S. Department of Labor's Office of Disability Employment Policy.
[107] Plaintiff's Amended Complaint (Dkt. 34, p. 13)
[108] APP. 207
[109] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R - "12.07.2021 Asked to go PT – informed about my dad")

Millen responded by asking Plaintiff if she wanted them to look in to transitioning Plaintiff into part-time status, and Plaintiff said she would be "definitely" be interested in finding out what the process "looked like."

While that transfer to part-time status was pending, on or around January 4, 2022, Plaintiff submitted an application for federal Social Security Disability Benefits to the Social Security Administration indicating that she had not engaged in substantial gainful activity since January 4, 2022.[110] On January 20, 2022 Dean Millen asked Plaintiff to confirm that she was asking to be released from her faculty contract and be re-classified as an adjunct faculty.[111] Plaintiff confirmed her desire to be reclassified as an adjunct in an email to Dean Millen, Aboalam, and Christy Phoenix on January 27, 2022. Plaintiff explained that "[t]he recent events with [her] dad's health forced [her] to go part-time" and that she did not want her absences "to impede the success of the students and the program."[112]

Dean Millen notified Plaintiff on January 26, 2022 that she and Aboalam had time-sensitive items they needed to discuss with Plaintiff before January 31, 2022.[113] Dean Millen subsequently scheduled a meeting with Plaintiff for January 28, 2022 at 2:30pm.[114] Plaintiff both wrote and sent her resignation letter to the District President of Collin College before her January 28 meeting with Aboalam and Dean Millen.[115] Although she claimed in her resignation letter that she had been "subject to…failure to provide reasonable accommodation" during her tenure with the College, Plaintiff stated that the **"abrupt decision to resign [was] a direct result of" a conversation Director Aboalam allegedly had with a student in one of Plaintiff's classes**.[116] (Emphasis

---

[110] APP. 218-228
[111] APP. 230-231
[112] APP. 233
[113] APP. 236
[114] APP. 234
[115] APP. 33-34 (Neubel Johnson Dep. Tr. 257:22-258:8)
[116] APP. 238

added). Plaintiff does not claim that Director Aboalam spoke to this student about Plaintiff's disability or need for accommodations.[117]

The Social Security Administration (SSA) issued a decision on February 14, 2024 determining that Plaintiff became eligible for SSDI benefits beginning on January 4, 2022.[118] Plaintiff testified that she is currently not able to work as a Pharmacy Technician because of her medical conditions.[119]

### III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exist when the " 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014).

The moving party " 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' " *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[117] APP. 238; APP. 32 (Neubel Johnson Dep. Tr. 251:21-23)
[118] APP. 218-228
[119] APP. 7-8 (Neubel Johnson Dep. Tr. 68:15-69:24)

"For any matter on which the non-movant would bear the burden of proof at trial … the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).[120] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits awarded." *Id*. (quoting *Liberty Lobby*, 477 U.S. at 249).

## IV.    ARGUMENT AND AUTHORITIES

### A.  Disability Discrimination

To establish a prima face case of discrimination under the ADA, a plaintiff must demonstrate: (1) she has a disability, (2) she was qualified for the job, and (3) she was subject to an adverse employment action because of her disability. *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022). If the plaintiff presents evidence of each element, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action. *Delaval v. PTech Drilling Tubulars, LLC.*, 824 F.3d 476, 479 (5th Cir. 2016). The burden then shifts back to the plaintiff to show the defendant's proffered reason is pretext for discrimination. *Id*.

Plaintiff, who has been diagnosed with ADHD, obsessive-compulsive disorder (OCD), Major Depressive Disorder (MDD), and Post-Traumatic Stress Disorder (PTSD), is a person with a disability.[121] But that is where Plaintiff's ability to establish a prima facie case ends as she is unable to meet the remaining elements to establish a viable ADA claim.

---

[120] The non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp., Inc.*, 773 F.3d at 694 (quoting *Celotex Corp.*, 477 U.S. at 324) (internal quotation marks omitted).
[121] Plaintiff's Amended Complaint (Dkt. 34); APP. 43; APP. 214-216

Plaintiff alleges that Collin College discriminated against her based on her disabilities on three occasions: (1) during a conversation with Dean Millen and Director Aboalam on November 2, 2021; (2) during a conversation with Dean Millen and Director Aboalam on November 9, 2021; and (3) when Plaintiff requested an audio version of the book "Emotional Intelligence 2.0."[122] Plaintiff, who provided audio recordings of each of these meetings as "Exhibit R" to her Amended Complaint, misstates the contents of the recordings. Even if the statements Plaintiff relies on *had* been made, they do not constitute disability discrimination because they are not adverse employment actions.

The term "adverse employment action," in the Title VII context, "is a judicially-coined term utilized as shorthand for the statutory phrase compensation, terms, conditions, or privileges of employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc). Although the Fifth Circuit in *Hamilton* acknowledged that the term "adverse employment actions" covers actions that affect the terms, conditions, or privileges of employment, an employee must still "allege not only an adverse action, but something more than a *de minimis* harm borne of that action." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023) (per curiam). The Supreme Court further clarified that the phrase "terms and conditions of employment" requires an employee to show that the alleged adverse employment action "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). The Fifth Circuit "has previously held that 'allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *Welsh v. Ft. Bend Indep.*

---

[122] Plaintiff's Amended Complaint (Dkt. 34); APP. 264-265 (Plaintiff's Response to Defendant's Interrogatory No. 3). Plaintiff was asked in her deposition whether her response to Interrogatory Number 3 encompassed all facts that support her claim of disability discrimination, and she testified that it did.

*Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (quoting *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (per curiam)), *abrogated in part by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023).

### 1. Recorded Conversation on November 2, 2021

On November 2, 2021, Plaintiff met with her supervisor, Program Director Hatem Aboalam, and Dean Michelle Millen. Plaintiff recorded this meeting.[123] Plaintiff alleges that Director Aboalam asked her if she had "real human emotions" during this meeting, which Plaintiff claims created the inference that she "was an animal and not a real human."[124] Director Aboalam does not, at any point, ask Plaintiff whether she has "real human emotions" during this recorded meeting. In the context of discussing a book about emotional intelligence, Plaintiff explained to Dean Millen and Director Aboalam that she utilizes different processes to control her emotional response to situations. Director Aboalam then asked Plaintiff whether "it is fair to say you have these five emotions: happy, sad, angry, afraid, ashamed?" After Plaintiff confirmed, Director Aboalam said, "So you do have the five core emotions that all humans have," and then restated his understanding of Plaintiff's explanation of how she deals with those emotions when they arise.[125] This context demonstrates not only that Director Aboalam did not ask Plaintiff whether she has "real human emotions," but also that the discussion was Director Aboalam's attempt to gain a greater understanding of Plaintiff's needs. Even if Director Aboalam had made the comment as Plaintiff alleges, it is not an adverse employment action as a matter of law.

### 2. Recorded Meeting on November 9, 2021

---

[123] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.02.2021 Book & disability discussion")
[124] APP. 264-265 (Plaintiff's Response to Defendant's Interrogatory No. 3)
[125] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.02.2021 Book & disability discussion")

Plaintiff met with Director Aboalam and Dean Millen again on November 9, 2021. She also recorded this meeting.[126] Plaintiff alleges that Director Aboalam remarked during this meeting that Plaintiff's disabilities were irrelevant, and that he did not need to make any special accommodations for Plaintiff to perform the job.[127] Again, Director Aboalam did not make this comment. Approximately 15 minutes into this conversation, Director Aboalam asked Plaintiff what she believed caused their working relationship to deteriorate.[128] After Plaintiff provided her perspective, Director Aboalam responded by expressing his concerns around 27 minutes into the recording.[129] At the 31:20 mark of the recording, Director Aboalam asked Plaintiff if she understood where he was coming from because he was trying to manage a program but getting pushback from Plaintiff on doing tasks that she had originally committed to doing. Plaintiff responded, "All you see is pushback…" and then changed the subject by saying: "You've said that I didn't disclose to you about my disability. I say in your office and talked about the structure…." At that point, Director Aboalam interjected: "Tiffani, that's irrelevant." While Plaintiff may have interpreted this as Director Aboalam stating that her disability was irrelevant, it is clear from the context that Director Aboalam was saying that this change of topics was irrelevant to what the two *had* been discussing: the breakdown in their professional relationship and Plaintiff's refusal to perform assigned tasks. Director Aboalam went on to give examples of how he had structured things differently to make Plaintiff comfortable. Approximately 33 minutes and 30 seconds into the recording, Dean Millen reminded Plaintiff that the HR Benefits office handles all requests for reasonable accommodation.

### 3.  Recorded "Emotional Intelligence 2.0" Conversation

---

[126] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R "12.07.2021 – Asked to go PT – informed about my dad")
[127] APP. 264-265 (Plaintiff's Response to Defendant's Interrogatory No. 3)
[128] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")
[129] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")

Plaintiff claims that the Performance Improvement Plan she was issued in August 2021 included a requirement that she read a book titled "Emotional Intelligence 2.0," and that Director Aboalam responded to her request for an audio version of the book as an accommodation by asking Plaintiff if she "was serious."[130] Plaintiff does not dispute that Director Aboalam obtained the audio version of this book for her.[131]

As an initial matter, Plaintiff testified that she recorded the entirety of her meetings with Director Aboalam and Dean Millen.[132] Yet neither Director Aboalam nor any other meeting participant is heard making the comments Plaintiff cites in support of her discrimination claims. Even assuming for purposes of this Motion that the remarks *had* been made, there is no evidence that the comments constituted discrimination in the terms, conditions, or privileges of Plaintiff's employment or that there was "more than a *de minimis* harm borne" of the conversation. *Harrison*, 82 F.4th at 431. Plaintiff continued to work with Director Aboalam and Dean Millen for several months after the alleged remarks during the August 2021 PIP meeting and the two November meetings. There was no change to her employment status and Plaintiff does not articulate any harm stemming from the alleged comments. Defendant is therefore entitled to summary judgment on Plaintiff's claims of disability discrimination.

### B. Constructive Discharge

Constructive discharge occurs when "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (quoting *Jurgens v. EEOC*,

---

[130] APP. 264-265 (Plaintiff's Response to Defendant's Interrogatory No. 3)
[131] APP. 263-264 (Plaintiff's Response to Defendant's Interrogatory No. 2)
[132] APP. 35-36 (Neubel Johnson Dep. Tr. 265:25-266:6)

903 F.2d 386, 390 (5th Cir. 1990)). "Demonstrating constructive discharge imposes a high burden" on a plaintiff. *Robinson v. Waste Mgmt. of Tex.*, 122 Fed. Appx. 756, 758 (5th Cir. 2004).

A plaintiff claiming constructive discharge "must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Co.*, 237 F.3d 556, 566 (5th Cir. 2001)). In determining whether an employer's actions constitute a constructive discharge, the Fifth Circuit considers the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004).

Plaintiff's claim of constructive discharge should be dismissed for two reasons. First, the evidence does not support the conclusion that Plaintiff's working conditions were so intolerable that a reasonable employee would feel compelled to resign. Second, although Plaintiff submitted her resignation on January 28, 2022, she applied for Social Security Disability benefits on January 4, 2022, while she was still working full-time for Collin College. Plaintiff's representation to the Social Security Administration that she was too disabled to work requires her to explain how, given this assertion, she was a qualified individual with a disability entitled to the protections of the ADA at the time she resigned.

       1.   <u>Plaintiff's working conditions would not have caused a reasonable person to resign</u>

Plaintiff cites five incidents that she claims resulted in her constructive discharge: (1) the performance evaluation she received from Director Aboalam on July 29, 2021, (2) her email

exchange with Christina Canales following her request for accommodation on September 29, 2021, (3) her meeting with Dean Millen and Director Aboalam on November 9, 2021, (4) an alleged conversation that one of her students had with Director Aboalam on January 26, 2022, and (5) a meeting on January 28, 2022 when Dean Millen and Director Aboalam were allegedly going to issue Plaintiff another disciplinary warning.[133] None of these events, together or in isolation, would have led a reasonable employee to feel they had no choice but to resign.

In *Shryer v. Univ. of Texas Sw. Med. Ctr. at Dallas*, the plaintiff presented evidence that her supervisor gave her poor performance reviews, sighed and occasionally commented on her disability, and expressed frustration to another supervisor that the plaintiff was not properly carrying out her responsibilities. 587 F. App'x 151, 157 (5th Cir. 2014). The Fifth Circuit held that these incidents did not support a claim of constructive discharge because "[t]ension between an employer and an employee is not enough, standing alone, to constitute a constructive discharge." *Id*. Here, as in *Shryer*, the Plaintiff rests her constructive discharge claim in part on issues with her supervisor that bear no relation to her disability. Nowhere in Plaintiff's recording of her November 9th meeting with Dean Millen and Hatem Aboalam is Director Aboalam heard saying that Plaintiff's disabilities are irrelevant or that he does not have to make accommodations for Plaintiff to do her job. To the contrary, Director Aboalam tells Plaintiff at 31 minutes and 55 seconds into the recording, "I can definitely consider structuring things for you in the way that will make you comfortable and I have done that."

With respect to the alleged conversation that Director Aboalam had with one of Plaintiff's students on January 26, 2022, Plaintiff provided nothing other than inadmissible hearsay evidence

---

[133] Plaintiff's Amended Complaint (Dkt. 34)

about what was supposedly discussed.[134] Even if evidence of this claimed conversation was admissible, a single discussion between a college student and Program Director about a professor's performance does not reflect working conditions so intolerable that a reasonable person would feel compelled to resign. Plaintiff alleges that Director Aboalam "blamed [her] for not following through with job responsibilities that were his, spoke badly about [her] to the student and told her false information about his responsibilities about the course curriculum."[135] There is no allegation that Plaintiff's disability was mentioned in any capacity during this conversation. This interaction, if it took occurred, represents the kind of "tension" between an employee and supervisor that the Fifth Circuit has expressly stated does not suffice for a claim of constructive discharge.

Plaintiff's communications with Christina Canales following her request for accommodation also do not support her constructive discharge claim. An employee's submission of a request for accommodation "triggers the employer's obligation to participate in [an] interactive process." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). "[T]he responsibility for fashioning a reasonable accommodation is shared between the employee and employer," *id.*, and so there must be "bilateral discussion" with "good-faith exploration." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily on the employee, or [her] health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor*, 93 F.3d at 165. Plaintiff submitted a request for reasonable accommodations on September 29, 2021, including a

---

[134] APP. 268 (Plaintiff's Response to Defendant's Interrogatory No. 10), 275 (Plaintiff's Amended Response to Defendant's Interrogatory No. 10)
[135] Plaintiff's Amended Complaint (Dkt. 34, p. 15)

modified work schedule and the ability to work from home as needed.[136] As part of that submission, Plaintiff acknowledged that she was responsible for providing documentation of her disability that supported her request for accommodation.[137] The only disability-related documentation the College had at that point was a note from Dr. Haresh Boghara regarding Plaintiff's request for a service dog as an accommodation.[138] That note stated that Plaintiff has ADHD, OCD, PTSD and MDD and that she required a service dog due to "[d]istractibility, compulsive thoughts and behavior causing uncontrolled anxiety, difficulty remember [sic] basic self care, difficulty with time management, the need for consistency, and post-traumatic stress."[139] Plaintiff initially provided no medical documentation supporting her requests for periodic telework and changes to her work schedule.

On October 8, 2021, Canales told Plaintiff that the College would proceed with processing Plaintiff's request for additional accommodations upon receipt of the necessary medical documentation, and responded to Plaintiff's questions about the documentation on October 11, 2021.[140] But Plaintiff did not submit a doctor's note to Collin College in connection with her September 29th accommodation request until November 19, 2021.[141] Defendant is not responsible for the length of time it took Plaintiff to obtain a note substantiating the disability-related limitations that necessitated her requested accommodations. By simply engaging in the interactive process and seeking information that it was entitled to under the ADA, Collin College did not create working conditions so intolerable that a reasonable employee would have felt compelled to resign. *See Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 317 (5th Cir. 2017) (per

---

[136] APP. 204-205
[137] APP. 204-205
[138] APP. 43
[139] APP. 43
[140] APP. 211-212
[141] APP. 208, 214-216

curiam) (finding that an employer "asking for further medical information" after an employee requested reasonable accommodation did not support a finding of harassment). This is particularly true since Plaintiff had undergone the full process for requesting a service dog accommodation and knew that she needed to submit medical documentation in connection with her September 29th request. Plaintiff could not, as she now alleges, simply rely on the initial medical documentation she submitted months prior to receive new accommodations stemming from different disability-related limitations later in her employment at Collin College.

Finally, Plaintiff cites a meeting with Dean Millen and Director Aboalam on January 28, 2022 during which they allegedly attempted to give her a third disciplinary action for failing to complete her PIP as support for her claim of constructive discharge.[142] There are two problems with this assertion: (1) Plaintiff testified that she wrote her resignation letter *before* the January 28th meeting,[143] and (2) Plaintiff's resignation letter states that her "abrupt decision to resign" is the "direct result" of conversations she claimed Director Aboalam had with students in her class in the days immediately preceding her resignation.[144] Based on her own admission, Plaintiff made the decision to resign her employment *before* the meeting with Dean Millen and Aboalam on January 28th and, therefore, her resignation could not have been based on the January 28th meeting. Likewise, Plaintiff's resignation letter does not include the January 28th meeting as a basis for her resignation.

"In the constructive discharge inquiry, the court examines the working environment as a whole, and, to find for the plaintiff, must conclude that the resignation was reasonable under all the circumstances. This holistic review of the workplace takes into account only the specific

---

[142] Plaintiff's Amended Complaint (Dkt. 34, p. 15)
[143] APP. 33-34 (Neubel Johnson Dep. Tr. 257:22-258:8)
[144] APP. 238

conditions imposed by the employer; the subjective state of mind of the employee is irrelevant." *Robinson,* 122 Fed. Appx. At 758 (internal citations omitted). Plaintiff cannot show that Collin College deliberately made her working conditions so intolerable that a reasonable person in Plaintiff's position would have felt they had no choice but to resign. Plaintiff was not demoted, neither her job responsibilities nor her salary was reduced, she was not reassigned to menial or degrading work, she was not offered early retirement, and she was not badgered, harassed, or humiliated. To the contrary, Plaintiff was working collaboratively with Director Aboalam and Dean Millen in the week before she resigned on Plaintiff's request to be reclassified as a part-time employee so that she could care for her ailing father,[145] and Director Aboalam was expressing support for Plaintiff as she took her father to various doctor appointments.[146] Because Plaintiff has not met the "high burden" of proving her constructive discharge claim, Defendant is entitled to summary judgment.

  2. <u>Plaintiff is collaterally estopped from claiming she was a qualified individual with a disability after January 4, 2022</u>

The Social Security Act provides monetary benefits to individuals "under a disability." 42 U.S.C. §423(a)(1). "Disability" under the Act is defined as an

> "inability to engage in any substantial gainful activity by reason of any … physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The impairment must be

> "of such severity that [the applicant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy … ." 42 U.S.C. §423(d)(2)(A).

---

[145] APP. 230-231, 233
[146] APP. 240-245

A plaintiff "cannot simply ignore [her] SSDI contention that [she] is too disabled to work." *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 926 (S.D. Tex. 2002). "To survive summary judgment, the plaintiff must explain why [her] SSDI contention is consistent with [her] ADA claim that [she] can 'perform the essential functions' of [her] previous job, at least with 'reasonable accommodation.' " *Id.* (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999)). "A plaintiff cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement … without explaining the contradiction or attempting to resolve the disparity." *Cleveland*, 526 U.S. at 806. "The explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential function' of his job with or without 'reasonable accommodation.' " *Id.*

Plaintiff initially applied for Social Security Disability benefits in 2017 and withdrew that application after she found employment.[147]  Then, while working at Collin College, Plaintiff applied for Social Security Disability benefits on January 4, 2022, approximately three weeks before she resigned from Collin College.[148] That conduct by Plaintiff was misleading to both the SSA and Collin College which was, at the time, evaluating her request to work part-time as an adjunct faculty member. As a part of that application, Plaintiff certified that she was no longer engaged in "substantial gainful activity" even though she was employed as a full-time professor collecting a full salary and benefits from Collin College. Because Plaintiff represented to the SSA that she was too disabled to work on January 4, 2022, she must explain how she can also claim entitlement to the protections of the ADA as someone who could perform the essential functions of her job with or without reasonable accommodation when she resigned her employment three

---

[147] APP. 6 (Neubel Johnson Dep. Tr. 51:5-20)
[148] APP. 218-228

weeks after submitting this application for SSDI benefits. If she cannot carry that burden, she is judicially estopped from making the claim that she was covered by the ADA when she resigned. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998) (holding that the plaintiff was estopped from claiming she was a qualified person with a disability because she failed to provide evidence to rebut the presumption created by statements made in her application for SSDI benefits). If Plaintiff was not a person with a disability under the ADA when she resigned, she cannot claim she was constructively discharged in violation of that statute.

### C.  Failure to Accommodate

"[A] plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Employers must "reasonably accommodate limitations, not disabilities." *Taylor*, 93 F.3d at 164. It is therefore "important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Id.*

Plaintiff acknowledges that Collin College granted her request for a service dog as a reasonable accommodation in March 2021 and her request for an audio version of a book in August 2021.[149] Her claim for failure to accommodate is based on four allegations: (1) she was denied "leave" to attend monthly doctor's appointments; (2) Collin College's HR Department impeded her ability to submit a request for accommodation by requiring her to obtain a new letter from her doctor; (3) she was not permitted to cover her office window and the College did not provide her

---

[149] APP. 263-264 (Plaintiff's Responses to Defendant's Interrogatory No. 2)

with a shade; and, (4) Collin College neither approved nor denied the accommodations she requested on September 29, 2021.

1. <u>Collin College did not deny the Plaintiff leave to attend doctor's appointments</u>

The evidence does not support Plaintiff's claims that Director Aboalam "denied [her] second accommodation request for monthly doctor's appointments,"[150] or that she was forced to forego any accommodation request because she could not take leave to obtain supporting medical documents.[151] On May 4, 2021, Plaintiff told Director Aboalam that she had "a monthly doctor's appointment," and that her next appointment was that Friday at 1pm.[152] Plaintiff asked Director Aboalam whether she could adjust her hours over the following days to make up the time she would need for that appointment because she did not have sufficient sick leave.[153] Plaintiff neither told Director Aboalam that she needed leave and/or a schedule adjustment for additional appointments nor did she disclose the purpose of the monthly appointments in this email. Plaintiff does not allege that Director Aboalam stopped her from attending her doctor's appointment on Friday, May 7, 2021.

Plaintiff states in her Supplemental Interrogatory Responses that she "contacted Christy Phoenix with the same request for a modified schedule" on May 4, 2021 and that Phoenix told her that she was expected to work a 40-hour week.[154] What Plaintiff omits from this response is the fact that she did not tell Phoenix she wanted or needed any changes to her schedule because of

---

[150] Plaintiff's Amended Complaint (Dkt. 34, p. 8)
[151] APP. 266 (Plaintiff's Response to Defendant's Interrogatory No. 6), 272-274 (Plaintiff's Amended Response to Defendant's Interrogatory No. 6)
[152] APP. 83
[153] APP. 83
[154] APP. 266 (Plaintiff's Response to Defendant's Interrogatory No. 6), 272-274 (Plaintiff's Amended Response to Defendant's Interrogatory No. 6)

medical appointments or other disability-related reasons. Instead, Plaintiff asked Phoenix two questions about her work hours and schedule:

(1) "Is my commute included in my scheduled work hours"; and,

(2) "My classes are scheduled from 8am to 4pm, which leaves no time for me to work with students after class. Is it too late to adjust the class times? What do you suggest?"[155]

Neither one of those 2 questions is a specific request for leave. Moreover, Phoenix answered those questions on May 4, 2021 and Plaintiff replied to Phoenix the same day by expressing frustration about feeling micromanaged with respect to her schedule.[156] Plaintiff said nothing in her follow up email to Phoenix about the need for a deviation from her core work hours or any other schedule adjustment because of a disability.[157] Therefore, this email exchange with Phoenix does not represent a request for accommodation.

On May 5, 2021, Director Aboalam informed Plaintiff that the expectations for her work hours were Monday to Friday, 8am to 5pm.[158] He also asked Plaintiff to "[p]lease communicate about any appointments ahead of time so we can better prepare."[159] On Saturday May 8, 2021, Plaintiff asked HR Manager Christina Canales whether she needed another accommodation request from her doctor "for assistance like additional time to complete projects, daily focus time, or flexibility in [her] work schedule."[160] Canales told Plaintiff that Collin College had to have information "to substantiate [Plaintiff's] request by identify[ing] the impairment [Plaintiff was] requesting to be accommodated."[161] Canales further explained that the College only had the

---

[155] APP. 69
[156] APP. 66-68
[157] APP. 66-68
[158] APP. 85
[159] APP. 85
[160] APP. 99
[161] APP. 98-99

Plaintiff's service dog request on file at that point,[162] and so Plaintiff would have to "complete the same online form" for her new request and then provide "the appropriate medical information."[163] The College had no information about what disability-related limitations required the accommodations Plaintiff inquired about in her May 8th email to Canales, and Plaintiff did not provide any in response to Canales's email. Instead, Plaintiff replied only: "Okay, Thank you."[164] Plaintiff did not ask anyone at the College whether she could take leave to go to the doctor to obtain information to substantiate her need for accommodation,[165] but claims that the College's "focus on office hours of 8am to 5pm made it impossible for [her] to schedule the necessary doctor's appointment for the reasonable accommodation request."[166] Plaintiff further alleges that she was "unable to take time off to secure the required letter, forcing [her] to forgo the accommodation request and consequently miss appointments necessary for obtaining her medication."[167]

As a baseline matter, "[i]n general … it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630, App. § 1630.9. Although Plaintiff claims that Director Aboalam denied her request for leave to attend monthly doctor's appointments in May 2021,[168] Plaintiff's May 4th email to Director Aboalam does not identify a disability or disability-related limitation that necessitated the monthly appointment, and Plaintiff does not ask Director Aboalam if she can take leave each month to

---

[162] As noted above, in Section IV(B)(1), the doctor's note provided in support of Plaintiff's request for a service dog did not indicate that Plaintiff had disability-related limitations that required the accommodations Plaintiff requested on September 29, 2021.
[163] APP. 98-99
[164] APP. 98
[165] APP. 16-17 (Neubel Johnson Dep. Tr. 158:6-10, 23-25; 159:1-15)
[166] APP. 266 (Plaintiff's Response to Defendant's Interrogatory No. 6), 272-274 (Plaintiff's Amended Response to Defendant's Interrogatory No. 6)
[167] APP. 266 (Plaintiff's Response to Defendant's Interrogatory No. 6), 272-274 (Plaintiff's Amended Response to Defendant's Interrogatory No. 6)
[168] Plaintiff's Amended Complaint (Dkt. 34, p. 8)

attend this standing appointment. Furthermore, Director Aboalam's email regarding Plaintiff's work hours gives no indication that Plaintiff could not take leave for medical appointments, and the evidence shows that Plaintiff did not interpret it that way. On May 10, just five days after Director Aboalam sent the email that Plaintiff cites as evidence that she could not attend monthly doctor's appointments, Plaintiff emailed Aboalam to notify him about upcoming doctor appointments on June 4th and July 2nd.[169] The very next day, May 11, 2021, Plaintiff told Director Aboalam that she had to go to the doctor every 28 to 30 days to prevent running out of her medication.[170] Plaintiff requested and was granted leave on May 21, and May 26-28.[171] On September 14, 2021, Plaintiff told Director Aboalam that her doctor appointments had been rescheduled to September 15th and Friday September 17th.[172] Director Aboalam again did not prevent Plaintiff from attending these appointments.[173] On October 1, 2021, Plaintiff notified Director Aboalam that she had upcoming doctor appointments on October 4th and 13th.[174] Aboalam responded: "Thank you for letting me know about your appointments, I hope you are better soon," and approved Plaintiff's leave requests.[175] On November 18, 2021, Plaintiff told Director Aboalam she could not come to work until the following Monday because she did not have her prescription medication and her new doctor only sent in "CII prescriptions" on Fridays.[176] Director Aboalam responded: "Okay thank you for letting us know."

Defendant is entitled to summary judgment on Plaintiff's claim that Collin College failed to reasonably accommodate her by denying leave related to her disabilities. The uncontroverted

---

[169] APP. 103-104
[170] APP. 102
[171] APP. 106-108
[172] APP. 114
[173] APP. 18 (Neubel Johnson Dep. Tr. 165:21-23); APP. 112-114
[174] APP. 117
[175] APP. 116-117
[176] APP. 120-121

evidence shows that Collin College granted Plaintiff's requests for leave to attend doctor appointments, and Plaintiff has no evidence that the College prevented her from submitting a request for accommodation by denying her leave to see a doctor to obtain supporting documentation.

2. <u>Collin College offered Plaintiff an alternative accommodation to the window covering</u>

Plaintiff alleges that she requested and was denied the accommodation of covering the sidelight window in her office to minimize auditory and visual distractions.[177] The evidence shows that Collin College offered Plaintiff an alternative accommodation that the Plaintiff refused.

Plaintiff claims that on June 3, 2021 she asked Director Aboalam for the accommodations of closing her door "and putting up shades or paper on the window of the door to focus and minimize distractions."[178] But on June 7, 2021, Director Aboalam notified Plaintiff that he had spoken with Dean Millen about "covering up the window portion" of Plaintiff's office and "[a]s a safety issue there [is] a concern to have that party fully covered."[179] Director Aboalam asked Plaintiff to uncover the window and she replied: "Will do."[180] Notably missing from those discussions was any disability-related reason for the window shade.

Subsequently, Plaintiff recorded the meeting she had a week later with Dean Millen, Director Aboalam and Christy Phoenix, which included discussion of the window covering in her office.[181] Approximately 24 minutes and 40 seconds into the conversation, Dean Millen explained that the College did not allow employees to put paper over the office sidelights "because if there is an emergency, we don't know who's in what office and it's up to – I'm the building captain for

---

[177] Plaintiff's Amended Complaint (Dkt. 34, pp. 9-11)
[178] Plaintiff's Amended Complaint (Dkt. 34, pp. 9-10)
[179] APP. 141
[180] APP. 141
[181] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "06.14.2021 Lay Out All Issues")

our emergency response team. So, it's my responsibility to go to every office to make sure that it's been evacuated in the event of a safety issue. If that paper is up, I won't know if anybody is there. So that's the reason we have it come down. If you are requiring some other type of barrier to um – to keep focus, and if that barrier obscures – I, I hear what you're saying, but if that barrier obscures that side light, it still defeats the purpose of safety. So, we're going to have to look at something else."[182]   At that point, Phoenix suggested that Plaintiff request reasonable accommodation through the HR/ Benefits Department and Plaintiff responded, "I don't know what kind of accommodation to request for that." Phoenix then said, "Maybe a different office so that your desk is not in that break area?" The conversation then turned back to other issues.[183] Plaintiff alleges that Dean Millen and Phoenix discussed "possibly ordering a window shade," but that claim is not substantiated by the recording. Plaintiff never asked to change offices, despite discussion of this alternative accommodation during the June 14th meeting and Plaintiff's own acknowledgment that hers was the only office located near the breakrooms and that "[t]here were two vacant offices in the hallway among the other employees."[184]

"The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)). The Appendix to the ADA regulations states:

> The accommodation, however, does not have to be the "best" accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated …. [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.

---

[182] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "06.14.2021 Lay Out All Issues")
[183] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "06.14.2021 Lay Out All Issues")
[184] Plaintiff's Amended Complaint (Dkt. 34, p. 9)

29 C.F.R. pt. 1630, App., § 1630.9. Plaintiff claims she sought to cover the sidelight in her office because noise and activity in the hallway created distractions that made it difficult for her to focus. Collin College explained to Plaintiff that she could not cover her sidelight for safety reasons. But the accommodation conversation did not end there. Dean Millen and Christy Phoenix invited Plaintiff to speak with HR about a different reasonable accommodation that would eliminate the distractions caused by the location of Plaintiff's office. When Plaintiff said she did not know what kind of accommodation to request, Phoenix suggested asking for a different office. Plaintiff never submitted an accommodation request for a different office location but now accuses Collin College of being "negligent" and not acting to help mitigate the distractions coming from the breakroom. In fact, it was the Plaintiff who was responsible for remaining in the location that purportedly left her unable to focus.

"An employer that fails to engage in the interactive process in good faith violates the ADA. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). Where the breakdown 'is traceable to the employee,' though, there is no violation. *Id.*" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). Collin College advised Plaintiff that it could not allow her to cover her office window because of safety concerns but proposed the idea of changing offices as an alternative accommodation. Moving Plaintiff away from the breakroom would have been an effective accommodation because it would have eliminated the noise and visual stimuli from the breakroom that Plaintiff claimed were distracting her from her work. By failing to accept the College's proposal and insisting that she be given her preferred accommodation of a window covering, Plaintiff bears the responsibility for the breakdown in the interactive process. As such, Collin College is entitled to summary judgement on this claim.

3. Plaintiff was able to perform her job responsibilities following submission of her September 29th request for accommodations

Plaintiff submitted a request for accommodation on September 29, 2021, seeking "approval for learning materials about ADHD as it relates to me and how a supervisor can work with an employee with ADHD," as well as a "[m]odified work schedule to office hours and teaching schedule, and ability to telework from home as need [sic], at no more than 2 days per week."[185] Plaintiff did <u>not</u> request additional time to complete tasks and projects, covering for her office door, or scheduling uninterrupted time to work without distractions, as she alleged in her Amended Complaint.[186]

On October 8, 2021 Christina Canales told Plaintiff that the College would proceed with processing the request for accommodation once it received Plaintiff's supporting medical information, but Plaintiff did not submit that documentation until November 19, 2021.[187] On December 7, 2021, Canales asked Plaintiff to clarify the modification Plaintiff was seeking to her work schedule.[188] Plaintiff responded on December 15th that her modified schedule would be "8 to 5 work schedule for days I'm not teaching or do not have morning classes" and "teaching modality for feasible classes."[189] Collin College was assessing Plaintiff's request and was closed for an extended period for the winter holiday. Plaintiff submitted her resignation on January 28, 2022 before the interactive process was complete.

As a threshold matter, Plaintiff's request that her *supervisor* be given training materials on how to work with an employee with ADHD is not a reasonable accommodation contemplated by the ADA. The term reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is

---

[185] APP. 204-205
[186] APP. 28-29 (Neubel Johnson Dep. Tr. 225:9-226:4)
[187] APP. 207-212
[188] APP. 207
[189] APP. 207

customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."[190] Educating Plaintiff's supervisor on how to work with a person with ADHD is not related to Plaintiff's performance of the essential functions of her job.

Plaintiff's request for a modified schedule became moot when she responded to Canales' December 7th email asking for clarification by stating that she was seeking "8 to 5 work schedule for days I'm not teaching or do not have morning classes."[191] Director Aboalam had informed Plaintiff months earlier, on May 5, 2021, that the expectations for her hours were "Mon-Fri 8am till 5pm."[192] Plaintiff was asked in deposition how this request differed from her assigned schedule and she responded "I don't know."[193] Because Plaintiff was requesting the schedule she was already working, there was no need for the College to take any action in connection with this aspect of Plaintiff's request after it received Plaintiff's clarification email.

Finally, nothing in the ADA's "regulations or the cases indicates … that an employer must move with maximum speed" to complete the interactive process "and preempt any possible concerns." *Loulseged*, 178 F.3d at 737. "[T]he employer is entitled to move at whatever pace he chooses as long as the ultimate problem – the employee's performance of her duties – is not truly imminent." *Id*. The only accommodation left to assess after Plaintiff's December 15th email about her schedule was her request to telework up to two times per week. Plaintiff has not suggested or otherwise shown she was unable to perform her job responsibilities without periodic telework in the period between the date she submitted her medical documentation and the date of her resignation. In fact, Collin College freely provided Plaintiff with leave to attend medical appointments and allowed Plaintiff to occasionally teach remotely during that period.

---

[190] 29 C.F.R. § 1630.2(o)(1)(ii).
[191] APP. 207
[192] APP. 85
[193] APP. 30-31 (Neubel Johnson Dep. Tr. 235:19-236:10)

Collin College promptly granted Plaintiff's request to bring a service dog to work and for an audio version of a book that was discussed as part of her Performance Improvement Plan. The College proposed an accommodation that would have eliminated the alleged distractions caused by the location of Plaintiff's office, but Plaintiff refused to accept anything but her preferred accommodation. The College was also engaged in the interactive process with Plaintiff at the time she resigned. For the reasons detailed above, Plaintiff cannot show a genuine issue of material fact in connection with her allegations about being denied leave to attend doctor's appointments, her request to cover her office window, or the accommodations she requested on September 29, 2021. Defendant therefore respectfully requests that it be granted summary judgment on Plaintiff's claim that Collin College failed to accommodate her disabilities.

### D. Harassment

A claim for disability-based harassment is "modeled after the similar claim under Title VII." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998). Therefore, to succeed on a claim of disability-based harassment, a plaintiff must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; [and] (4) that the harassment complained of affected a term, condition, or privilege of employment."

*Id.* (internal quotations omitted). "The legal standard for workplace harassment in [the Fifth] circuit … is high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503 (5th Cir. 2003). The harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *McConathy*, 131 F.3d at 563.  In determining whether a work environment is abusive, the Court must consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."

*Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999), cert. denied, 528 U.S. 963 (1999). Conduct is not actionable unless it is both objectively and subjectively offensive. *Id.*

Plaintiff cites sporadic, unrelated events during her employment as evidence of disability-based harassment: (1) emails Director Aboalam sent to her on June 9, 2021; (2) Director Aboalam's request that she remove her window covering; (3) the Level Two discipline she received on June 14, 2021; (4) the performance review she received on July 29, 2021; (5) emails she exchanged with Canales about her request for accommodation between October and November 2021; (6) comments allegedly made by Director Aboalam in meetings on November 2nd and 9th; (7) Director Aboalam's conversation with a student on January 26, 2021 during which he supposedly criticized Plaintiff's performance; and (8) being called into a meeting with Dean Millen and Director Aboalam on January 28, 2022 to be given a third disciplinary action.[194] These incidents, considered in isolation and collectively, do not support an inference that Plaintiff was subjected to harassment that was sufficiently severe or pervasive to create a hostile work environment.

1. Criticism of plaintiff's performance does not constitute disability-based harassment

In *Credeur v. La. Through Office of Atty. Gen.*, the plaintiff claimed she was harassed by: "(1) being ordered to attend the meeting with [the Director of Administrative Services] on March 3, 2014; (2) the requirement that she work at least three to four hours in the office and to not work from home; (3) criticism of her work performance; (4) threats of termination; (5) asking her to 'sign false payroll documents,' and (6) being forced to take leave without pay instead of FMLA." 860 F.3d 785, 796 (5th Cir. 2017). The *Credeur* court held that "[c]riticism of an employee's work

---

[194] Plaintiff's Amended Complaint (Dkt. 34); APP. 265 (Plaintiff's Response to Defendant's Interrogatory No. 4)

performance … and even threats of termination do not satisfy the standard for a harassment claim" and found it significant that none of the employer's actions were " 'physically threatening or humiliating' or even offensive." *Id.* (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001)).

Under *Credeur*, Director Aboalam's criticism of Plaintiff's work performance does not support a claim for disability-related harassment. Plaintiff's frustration with Director Aboalam's decision to send her multiple work-related emails in one day, comments Director Aboalam allegedly made to a student about Plaintiff that had nothing to do with her disability, and her disagreement with the College's assessment of her performance do not satisfy the high burden for harassment in the Fifth Circuit. These events were not offensive or threatening and are unrelated to her disability.

    2.   Director Aboalam's Alleged Comments Do Not Amount to Actionable Harassment

As discussed *supra* in Section IV(A), Aboalam is not heard making any of the comments Plaintiff attributes to him in Plaintiff's recordings of the meetings on November 2 or November 9, 2021. Even assuming for the sake of this Motion only that he had made those remarks, those three isolated comments do not support a claim for harassment because they are definitionally the kind of "offhand comments, and minor isolated incidents" that the Fifth Circuit has held will generally not be sufficient to affect a term or condition of employment, and she has not proffered evidence that they affected her work performance. *Shepherd*, 168 F.3d at 874. "It is a simple fact that in a workplace, some workers will not get along with one another, and [the Fifth Circuit] will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense." *McConathy*, 131 F.3d at 564.

    3.   The College's Efforts to Engage in the Interactive Process Are Not Evidence of Harassment

Plaintiff offers no evidence of how Director Aboalam's request that she remove the covering on her office window or her communications with Christina Canales following her request for accommodation on September 29, 2021 constitute disability-based harassment. As explained in Section IV(C)(2), Collin College notified Plaintiff that covering her office window created a safety issue but also suggested that Plaintiff ask for a different office as an alternative accommodation. Collin College had a legitimate reason to ask Plaintiff to uncover her window. Although Plaintiff has not identified any impact of this request on the terms or conditions of her employment, she bears full responsibility for any such impact given that she rejected the College's effective alternative proposal. *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021) (quoting *Agro Distrib.*, 555 F.3d at 471) ("The appropriate accommodation need not be 'the employee's preferred accommodation,' and the employer is free to 'choose the less expensive accommodation or the accommodation that is easier for it to provide.' ").

Plaintiff similarly fails to explain or otherwise show how her conversations with Christina Canales about the accommodation request she submitted on September 29th created a hostile work environment. As discussed *supra* in Section IV(B)(1), Collin College was entitled to seek additional information from Plaintiff as part of the interactive process. There was nothing said or done during this process that was subjectively offensive, nor did the conversation have any negative impact on the terms or conditions of Plaintiff's employment.

Plaintiff failed to raise a genuine issue of material fact that the alleged acts and comments she cites as evidence of harassment were sufficiently severe and pervasive to constitute a hostile work environment based on disability. Therefore, summary judgment should be granted to Collin College.

### E.  Retaliation

To establish a prima facie case of retaliation under the ADA, the plaintiff must show (1) she "engaged in an activity protected by the ADA," (2) she "suffered an adverse employment action," and (3) "there is a causal connection between the protected activity and the adverse action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). If the plaintiff can establish her prima facie case, the burden shifts to the employer to demonstrate it had a "legitimate, nondiscriminatory reason" for the adverse action. *Id*. "If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation." *Id*. "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*. To avoid summary judgment, "the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

Plaintiff claims that Collin College retaliated against her on four occasions during her employment. The evidence does not support Plaintiff's allegations and, therefore, Plaintiff's retaliation claim should be dismissed.

1. There is no evidence that Plaintiff's conversation with Christy Phoenix on April 28, 2021 constituted protected activity, or that there was a causal link between the conversation and the Level 1 Warning

Plaintiff met with Christy Phoenix on April 28, 2021, and claims that she made an "informal complaint" against Director Aboalam during that meeting.[195] She alleges that she was then issued a "Level One Disciplinary action" on May 5, 2021, in retaliation for her discussion with Phoenix.[196]

---

[195] Plaintiff's Amended Complaint (Dkt. 34, p. 7)
[196] APP. 266-267 (Plaintiff's Response to Defendant's Interrogatory No. 7)

There is no evidence that Plaintiff engaged in protected activity when she met with Phoenix on April 28, 2021. The emails that Plaintiff and Phoenix exchanged following the meeting do not reflect a discussion of any topic related to Plaintiff's disability. In addition, there is no causal link between Plaintiff's conversation with Phoenix on April 28th and the discipline she received on May 5th. A causal link is established when the evidence demonstrates that "the employer's decision … was based in part on **knowledge** of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (emphasis added). There is no evidence that Director Aboalam knew Plaintiff had spoken with Phoenix before he presented her with the Level One Warning on May 5, 2021. And Plaintiff does not claim that Phoenix was involved in the discipline. To the contrary, Plaintiff alleges that Phoenix expressed her "surprise" that Plaintiff had been disciplined on May 5th.[197] For these reasons, Plaintiff cannot establish the prima facie elements of her claim of retaliation related to the Level One Warning she received on May 5, 2021.

Even assuming for sake of argument that Plaintiff could make out a prima facie case, she cannot show that "but for" her discussion with Phoenix she would not have been issued a Level One Warning. Plaintiff claims she requested the May 5th meeting with Dean Millen and Director Aboalam and expected that it was going to be about concerns she had expressed to them.[198] In reality, Director Aboalam scheduled the meeting, which he titled "One month assessment meeting."[199] The Level One Warning contains nearly two full pages of details about problems with Plaintiff's performance and conduct that Director Aboalam observed in the first 45 days of Plaintiff's employment. Some of these issues were referenced in an email Director Aboalam sent to Plaintiff on April 22, 2021, several days before her conversation with Phoenix.[200] Plaintiff bears

---

[197] Plaintiff's Amended Complaint (Dkt. 34, pp. 7-8)
[198] Plaintiff's Amended Complaint (Dkt. 34, p. 7)
[199] APP. 247
[200] APP. 59-64

the ultimate burden of producing evidence that the College would not have disciplined her on May 5, 2021 but for her April 28th conversation with Phoenix. Because she cannot carry that burden, the College is entitled to summary judgment on Plaintiff's claim that the Level One Warning constituted retaliation in violation of the ADA.

2.  There is no evidence that Collin College was aware of Plaintiff's alleged submission of an internal complaint on June 10, 2021

Plaintiff alleges that she filed a formal complaint with Collin College's HR Department on June 10, 2021. She claims that Collin College subsequently retaliated against her on June 14, 2021, by issuing her a Level Two Warning and "revoking a previously approved verbal accommodation … and denying another accommodation request for a modified schedule."[201]

Plaintiff cannot establish a prima facie case of retaliation in connection with this claim for three reasons. First, she did not engage in activity protected under the ADA. In addition, Plaintiff cannot show that Collin College received any internal complaint from her before she was issued the Level Two Warning. Finally, Plaintiff admitted that she engaged in the conduct that formed the basis for the Level Two Warning, which establishes that her internal complaint played no role in the decision to discipline her.

The document Plaintiff created on June 10, 2021 (which is a printout Plaintiff acknowledges she made *before* she allegedly submitted it) does not mention disability, accommodation, or any other activity covered by the ADA.[202] In *Harris-Childs v. Medco Health Solutions, Inc.* the Fifth Circuit found that the plaintiff failed to demonstrate that she engaged in protected activity for purposes of her Title VII retaliation claim because, in her complaints to management, she never stated that she felt she was "being treated unfairly due to her race or sex."

---

[201] APP. 266-267 (Plaintiff's Response to Defendant's Interrogatory No. 7)
[202] APP. 249-257

169 Fed. App'x 913, 916 (5th Cir. 2006). Although Plaintiff indicated on the face of her draft complaint that she was claiming unlawful discrimination and retaliation and used the word "retaliation" once in the summary section of the document, she did not relate any of the conduct she described in the complaint to her disability. Therefore, the Plaintiff's June 10th internal complaint, even if it had been submitted on that date, was not activity protected under the ADA.

There is no evidence that Plaintiff submitted an Employee Complaint Form to Collin College on June 10, 2021 other than the printout she attached as an Exhibit to her Amended Complaint.[203] Plaintiff told Collin College's HR Manager, Tonya Jacobson, that she printed that document "*before* [she] clicked submit."[204] Plaintiff did not receive confirmation that it was received by anyone at Collin College after she purportedly submitted it in the College's system. Without proof that the College was aware of the June 10th complaint before Plaintiff was issued the Level Two Discipline, Plaintiff cannot show a causal connection between her ostensible complaint and the discipline she received on June 14, 2021.

Plaintiff also cannot carry her ultimate burden of proving that she would not have received the second discipline but for the document she claims she filed on June 10, 2021. Plaintiff recorded the June 14th meeting with Dean Millen, Director Aboalam, and Christy Phoenix when Plaintiff was notified that she was receiving a Level Two Warning. Approximately 41 minutes and 30 seconds into the recording Dean Millen asked Plaintiff whether she recalled having a conversation with an employee named Diana Eure about Plaintiff's frustrations. At 44:46, Christy Phoenix asked Plaintiff whether she remembered making a comment to Eure about being "worked like a slave," and Plaintiff responded, "Yes." Phoenix then explained to Plaintiff that the conversation was inappropriate, and that Eure had reported it to HR. At the 47:27-mark, Plaintiff asked Phoenix

---

[203] APP. 249-257; APP. 23 (Neubel Johnson Dep. Tr. 190:8-24)
[204] APP. 147 (Emphasis added)

whether she could apologize to Eure. Therefore, even if Plaintiff could establish a prima facie case of retaliation, which she cannot, the fact that Plaintiff does not dispute making the comments that formed the basis for the Level Two Warning prevents her from carrying her ultimate burden of showing that she would not have received that discipline "but for" the complaint she purportedly submitted on June 10, 2021.

Finally, there is no evidence that Plaintiff received an email "revoking a previously approved verbal accommodation … and denying another accommodation request for a modified schedule" after June 10, 2021. Director Aboalam notified Plaintiff that she had to uncover her office window on June 7, 2021,[205] three days before she took a screen shot of her draft complaint, and the Plaintiff has provided no evidence that the College ever denied her request for a modified schedule.

### 3.    Plaintiff did not engage in protected activity on July 13, 2021

With the assistance of HR Manager Tonya Jacobson, Plaintiff filed an internal complaint on July 13, 2021.[206] She alleges that she received an overall rating of "Needs Improvement" on her performance evaluation in retaliation for this complaint. Defendant is entitled to summary judgment on this claim because the July 13th complaint was not activity protected by the ADA and the Plaintiff does not have evidence that "but for" her complaint she would have received a different rating on her performance evaluation.

The content of Plaintiff's July 13th internal complaint mirrors what she purportedly drafted (but did not submit online) on June 10, 2021. Plaintiff testified in her deposition that she sent Jacobson the screenshot of what she thought she submitted on June 10th and Jacobson used that

---

[205] APP. 141
[206] APP. 151-153

information to create an internal complaint for Plaintiff on July 13, 2021.[207] For the same reasons articulated in Section IV(E)(2), the Plaintiff's July 13th complaint does not constitute protected activity under the ADA. Therefore, Plaintiff cannot establish a prima facie case of retaliation.

Plaintiff also cannot meet her burden at summary judgment to demonstrate that there is a factual dispute about whether she would have received a different rating on her 2020-2021 faculty performance appraisal but for the internal complaint she made on July 13, 2021. She claims that she should have received a "Meets Expectations" rating "in areas where it was impossible to have completed the required work."[208] But Plaintiff has not produced evidence of any such policy and that language is not found in any Collin policy or procedure. Furthermore, Director Aboalam *did* rate Plaintiff as "Meets Expectations" in the two areas that were inapplicable at the time of Plaintiff's annual review: Teaching and Advising, and Supporting Students.[209] Director Aboalam also rated Plaintiff as "Meets Expectations" in the Professional Development category.[210] The only areas where Plaintiff was rated as "Needs Improvement" were College Service and Professionalism.[211] Director Aboalam provided justifications for his rating in both categories, and stated that he selected an overall rating of "Needs Improvement" because of Plaintiff's Level Two Warning.[212] Plaintiff has not and cannot produce any evidence to show that Director Aboalam's detailed justification for these performance ratings were pretext for retaliation. Therefore, Defendant is entitled to summary judgment on this claim.

4.  <u>Plaintiff did not suffer any adverse employment action as a result of filing a charge of discrimination with the EEOC</u>

---

[207] APP. 24-25 (Neubel Johnson Dep. Tr. 200:18-201:6)
[208] APP. 266-267 (Plaintiff's Response to Defendant's Interrogatory No. 7)
[209] APP. 179-182
[210] APP. 182-184
[211] APP. 184-186
[212] APP. 182-189

Plaintiff filed a charge of discrimination with the EEOC on October 26, 2021.[213] She claims that during a meeting on November 9, 2021, Director Aboalam "stated that Plaintiff's disabilities were irrelevant and refused to make any accommodation for Plaintiff to perform Plaintiff's job. Dean Millen supported this statement, which led to a third disciplinary action for failing to complete the requirements of Plaintiff's Performance Improvement Plan."[214] Because there is no evidence that Plaintiff suffered an adverse employment action after she filed her EEOC charge, Defendant is entitled to summary judgment.

As discussed *infra* in Section IV(A)(2), Director Aboalam did not tell Plaintiff that her disabilities were irrelevant or that he did not have to accommodate her.[215] Director Aboalam and Plaintiff were discussing the deterioration of their working relationship.[216] After Plaintiff explained her perspective, Director Aboalam expressed his frustration with Plaintiff's conduct and performance, including her unwillingness to perform work she had previously agreed to do. Plaintiff then changed the subject to the disclosure of her disability to Director Aboalam. Because that did not relate to what they were discussing, Director Aboalam stated, "Tiffani, that's irrelevant."[217] This was a reference only to the Plaintiff's abrupt change of topics, not to her disabilities, as evidenced by the fact that Director Aboalam goes on to talk about the ways in which he had structured things differently for Plaintiff's benefit.[218]

Assuming for the sake of this Motion that Aboalam *had* made the statements Plaintiff attributes to him during this November 9th conversation, which are not heard in Plaintiff's recording of the meeting, those statements do not constitute an adverse employment action. An

---

[213] APP. 259-260
[214] APP. 266-267 (Plaintiff's Response to Defendant's Interrogatory No. 7)
[215] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")
[216] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")
[217] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")
[218] Plaintiff's Amended Complaint (Dkt. 34) (Exhibit R – "11.09.2021 My disability is irrelevant")

individual seeking to establish a prima facie case of retaliation must show "that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A materially adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Marshall v. McDonough*, 2021 WL 3917001, at *10 (N.D. Tex. July 15, 2021), report and recommendation adopted, 2021 WL 3912804 (N.D. Tex. Sept. 1, 2021) (citing *Burlington*, 548 U.S. at 67). In *Cole v. City of Port Arthur, Texas*, the plaintiff argued that a remark by his supervisor constituted an adverse action supporting his retaliation claim. No. 1:13-CV-176, 2014 WL 3513366, at *12 (E.D. Tex. July 16, 2014). The court held that the plaintiff could not sustain a retaliation claim based on the comment because he "presented no evidence of any actual, objective harm he suffered as a result of [the supervisor's] alleged remark....The comment was not a formal disciplinary action, it had no effect on [the plaintiff's] employment, pay, or benefits, and had no meaningful, objective impact on his day-to-day activities." *Id*. As such, the court determined that the comment was "not of such a nature that it would dissuade a reasonable employee from engaging in protected activity." *Id*. Just as in *Cole*, there is no evidence that the Plaintiff here suffered any harm from the comments she claims were made by Director Aboalam. The alleged comments did not constitute discipline, and Plaintiff has not presented evidence of any objective impact of the purported remarks on her day-to-day work. A plaintiff's "subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary judgment." *Grice v. FMC Techs., Inc.*, 216 Fed. Appx. 401, 407 (5th Cir. 2007). Therefore, Plaintiff cannot base her claim of retaliation on the comments she alleges were made during the recorded meeting with Director Aboalam and Dean Millen on November 9, 2021.

Finally, Plaintiff was not issued a third discipline. She alleges that Director Aboalam and Dean Millen called her to a meeting "to attempt to" give her a third disciplinary action for failing to complete her PIP.[219] But Plaintiff admits that she authored her resignation letter before the meeting on January 28, 2022, mooting any claimed impact of the phantom third discipline.[220]

## V.    CONCLUSION

WHEREFORE PREMISES CONSIDERED, Defendant Collin College asks that this Court grant its Motion for Summary Judgment against Tiffani Neubel-Johnson, dismiss all of Plaintiff's claims, and award Defendant its costs expended in defending this matter. Defendant requests such other and further relief it is entitled to in law and equity.

Respectfully submitted,

*/s/ Kimberly S. Moore*
**KIMBERLY S. MOORE**
State Bar No. 00784629
ksmoore@clarkhill.com
**MEAGHAN L. KUELBS**
State Bar No. 24105277
mkuelbs@clarkhill.com
**CLARK HILL PLC**
2600 Dallas Parkway
Suite 600
Frisco, Texas 75034
(469) 287-3900
(469) 287-3999 Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 7th day of July, 2025, a true and correct copy of this Motion was filed utilizing the Court's ECF system.

---

[219] Plaintiff's Amended Complaint (Dkt. 34, p. 15)
[220] APP. 33-34 (Neubel Johnson Dep. Tr. 257:22-258:8)

*/s/ Kimberly S. Moore*
**KIMBERLY S. MOORE**